UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VEEDER-ROOT FUELQUEST, LLC, a limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>ANGELA WISDOM, an individual, and LEIGHTON O'BRIEN, INC., a corporation;<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF |

Plaintiff Veeder-Root FuelQuest, LLC ("VRFQ," "Insite360," or the "Company"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendants Angela Wisdom ("Wisdom") and Leighton O'Brien, Inc. ("LOI") (jointly, "Defendants"):

**<u>NATURE OF THE ACTION</u>**

1.      This is an action to enforce Defendant Wisdom's valid restrictive covenants owed to VRFQ, which does business under the commercial name of Insite360. VRFQ and Insite360 will be used interchangeably in this Complaint, but Insite360 is not a separate legal entity.

2.      Wisdom has blatantly violated her restrictive covenants by, among other things, accepting a competitive role with LOI in the same territory she serviced for Insite360. But Wisdom did not just accept employment in violation of her restrictive covenants – she repeatedly misled Insite360 to believe that her role with LOI would be in a different territory and would be providing different services than those she had provided to Insite360. As a result of her misrepresentations,

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

she was permitted to remain in her role for 3 weeks, with access to voluminous confidential and trade secret information.

3.      Upon learning of the truth via a press release issued by Wisdom's soon-to-be new employer – while she was still employed by VRFQ – the Company asked Wisdom to confirm that, as she had promised, she would not accept a competitive role in violation of her covenants. Wisdom refused to provide such assurances, and further refused to certify in writing that she had not improperly accessed, used, or disclosed Insite360's confidential information and trade secrets, as required by her restrictive covenants agreement and statutory law.

4.      In fact, Insite360 would later learn that Wisdom had retained at least 15 Company documents, which included highly confidential information that would extremely useful for a competitor on her personal computer, without authorization and for no legitimate business reason. To this day, Insite360 cannot be sure that Wisdom does not still have access to this information, nor does it have any assurances that Wisdom has not used it or shared it with LOI.

5.      In addition, Wisdom and LOI intentionally misled Insite360 into believing that they were negotiating in good faith to resolve the parties' dispute, including promising to provide written assurances that Insite360's confidential information had not been exploited or accessed. Despite this, without warning, Wisdom filed a declaratory judgment action in Washington state court seeking to avoid the covenants she freely agreed to abide by, and for which she was handsomely compensated. That suit was procedurally improper, as Wisdom sued Insite360, which is not a legal entity capable of being sued.

6.      VRFQ now seeks damages and injunctive relief as a result of Wisdom's breaches of contract, her misappropriation of trade secrets, and LOI's tortious interference.

## THE PARTIES AND RELEVANT PERSONS

7.      VRFQ is a Delaware limited liability corporation with its principal place of business located in Houston, Texas.

8.      Upon information and belief, Wisdom is a citizen of the State of Florida.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 2

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

9.      Upon information and belief, LOI is a Texas corporation with its principal place of business located in Dallas, Texas.

## JURISDICTION AND VENUE

10.     This Court has federal jurisdiction over VRFQ's claims brought under the Defend Trade Secrets Act, pursuant to 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over VRFQ's remaining claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Wisdom because by executing her restrictive covenants agreement, she expressly consented to the exercise of personal jurisdiction by the courts of the State of Washington. In addition, Wisdom has filed a separate lawsuit against Insite360 seeking to invalidate her restrictive covenants in King County Superior Court. While that suit is procedurally defective and Insite360 will be imminently moving to dismiss, her conduct in proactively seeking relief from courts in this judicial district likewise subject her to personal jurisdiction in this action.

12.     This Court has personal jurisdiction over LOI because, upon information and belief, it regularly conducts business in the state of Washington (including through its service partners), and because it intentionally and tortiously interfered with a contract governed by Washington law and for which courts in this jurisdiction are designated as the exclusive forum to resolve any disputes thereunder.

13.     Venue is proper in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

I.    **Insite360's Business**

14.     Insite360 is a fueling software and solutions provider in the retail and wholesale fueling industry. Insite360 is not a separate legal entity.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 3

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

15. Insite360 solutions empower global retail and commercial fueling operations, fuel wholesalers, and supply chain members to accurately monitor fuel inventory, optimize fuel logistics and pricing, manage environmental compliance, and optimize equipment performance.

16. One of the solutions provided by Insite360 is an Advanced Variance Analysis ("AVA"), which is a managed service that monitors fuel sites and reconciles inventory and deliveries, identifies instances and sources of fuel variance, and provides actionable recommendations to reduce loss. This solution provides advanced detection and analytics to pinpoint variance and physical loss of fuel that could be masked by data, reporting, and equipment errors. Insite360's AVA solution reduces shrinkage and cost, while maximizing fuel revenue.

17. LOI is a direct competitor to Insite360. Like Insite360, LOI is a global fuel analytics technology provider for retail fuel networks, and commercial and bulk fuel operations that specializes in wetstock management, among other things. LOI provides solutions that compete with Insite360's offerings, including its "Wetstock Live" offering. LOI's website touts Wetstock Live as software that "provides remote management of operational and maintenance issues at site and network visibility into factors driving accounting fuel losses or gains," including leak detection.

18. In order to maintain an edge in the highly competitive fueling industry, Insite360 has spent decades and millions of dollars developing its trade secrets and confidential information, including R&D to support the Company's software solutions and services, including AVA. Insite360 protects its confidential information and trade secrets by, among other things: limiting the disclosure and use of this information to only the Insite360 employees who need the information to perform their roles for Insite360; educating its workforce about the requirement and necessity of keeping this information confidential; limiting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring employees with access to such information to execute written

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 4

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

1  agreements that protect against the misuse and improper disclosure of Insite360 confidential

2  information.

3       19.     As a result of these measures, Insite360's confidential and proprietary trade secret

4  information is not available to the general public and is closely guarded by Insite360.  Insite360

5  keeps such information strictly confidential in order to maintain a competitive advantage against

6  its competitors.  The time, expense, and effort that goes into the development of Insite360

7  confidential and proprietary information is such that the independent development of identical or

8  comparable materials by Insite360 competitors would be extraordinarily difficult and expensive.

9  **II.**    **Angela Wisdom's Employment**

10       20.     Insite360 hired Wisdom as a Senior Director of Sales in the fall of 2017. In May of

11  2020, Insite360's General Manager and Vice President, Rachel Collins ("Collins") further

12  expanded Wisdom's role to include marketing responsibilities as well.

13       21.     In her role with Insite360 and its predecessor, Wisdom had full insight into the

14  Company's analytics and platform strategy, including all current and future areas for investment.

15  Wisdom also was directly involved in strategic partnership discussions and strategy regarding the

16  Company's fuel analytics capabilities across the entire wetstock management customer value

17  chain, and she had direct responsibility for driving growth in Northern America across all Insite360

18  solutions across the fuel supply value chain, i.e., compliance, variance analysis, leak detection,

19  loss prevention, financials, etc. as well as remote site management.

20       22.     As a result of her responsibilities and duties, Wisdom had access to, and became

21  intimately familiar with, Insite360's confidential, proprietary, and trade secret information,

22  including but not limited to business strategy plans, sales strategies, pricing plans and information,

23  the Company's pipeline, customer information (including which customers had purchased which

24  services), information regarding prospects (including details of anticipated deals, and how far

25  along each prospective deal was), marketing strategies, development plans, strengths and

26  weaknesses of certain Insite360 products and services, in-depth incentive and commission

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 5

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

program information giving visibility into how the Company creates the necessary behaviors to drive growth, and more. In fact, part of Wisdom's role was to contribute to the Company's strategy, establish growth programs, and actively drive and sponsor merger and acquisition and/or partnership discussions.

**III.    Wisdom's Restrictive Covenants Agreements**

23.    In connection with her initial employment with Insite360, Wisdom signed a Nondisclosure and Assignment Agreement on or about October 28, 2017 (the "NDA") which provided that during and after her employment with the Company, Wisdom would not directly or indirectly use or disclose to anyone outside of the Company any of Insite360's trade secrets or confidential information, including customer lists, pricing, margins, business and marketing plans, strategy, and more. The NDA also obligated Wisdom to return all originals and copies of Company property upon termination of her employment, and further obligated her to provide a copy of the NDA to any subsequent employers. A copy of the NDA is attached as Exhibit 1.

24.    In mid-2019, Wisdom threatened to leave the Company. In an effort to retain her, Insite360 offered her increased compensation in exchange for her agreement to remain with the Company and her execution of a new restrictive covenants agreement. Specifically, Insite360 offered Wisdom the following compensation to which she was not previously entitled:

a.    An additional $10,000 in base salary;

b.    A guarantee of 80% sales commission in 2019 against her 2019 sales commission incentive of $125,000, and a guaranteed 60% of her sales commission in 2020;

c.    A lump sum sales bonus of over $56,000;

d.    A special $100,000 equity award; and

e.    Acceleration of the remaining $15,000 installment of an unpaid signing bonus from a previously guaranteed bonus.

25.    On July 23, 2019, Joy Snow ("Snow"), the Company's head of HR, emailed Wisdom a copy of two agreements for her review, a Fortive Corporation and its Affiliated Entities

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 6

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

68646250v.1

Agreement Regarding Competition and Protection of Proprietary Interests (the "RCA," a copy of which is attached here as Exhibit 2) and a signing bonus repayment agreement. In Snow's cover email to Wisdom, she informed Wisdom that executing the RCA was required upon a change in compensation.

26.     On July 26, 2019, Wisdom returned the executed RCA, repayment agreement, and the compensation offer itself in the same email. In that email, she wrote: "Thank you for the amazing offer and vote of confidence as we move forward. Please find all 3 signed documents attached."

27.     Upon information and belief, Wisdom was aware that executing the RCA was a condition to receiving the compensation set forth in the compensation offer. Wisdom never asked any questions about the RCA or its enforceability.

**IV.     Terms of the RCA**

28.     The RCA contains several covenants aimed at protecting Insite360's legitimate business interests. Among other things, Section 2 of the RCA required Wisdom, during her employment with the Company, to "devote [her] best efforts to the performance of [her] duties and the advancement of the Company" and prohibited her from engaging "in any other employment, profitable activities, or other pursuits which would cause [her] to disclose or utilize the Company's Confidential Information, or reflect adversely on the Company."

29.     "Confidential Information" is defined in the RCA as:

any information (in whatever form and whether or not recorded in any media and whether or not it constitutes a trade secret) which is not generally known to the public, and which (a) is generated or collected by or utilized in the operations of the Company and relates to the actual or anticipated business or research or development of the Company or the Company's actual or prospective vendors or customers; or (b) is suggested by or results from any task assigned to [Wisdom] by the Company or work performed by [Wisdom] for or on behalf of the Company or

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 7

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

any customer of the Company. . . . Examples of Confidential Information include, but are not limited to, customer and supplier identification and contacts, information about customers, Voice of the Customer data, reports or analyses, business relationships, contract terms, pricing, price lists, pricing formulas, margins, business plans, projections, prospects, opportunities or strategies, acquisitions, divestitures or mergers, marketing plans, advertising or promotions, financial data (including but not limited to the revenues, costs, or profits, associated with any products or services), business and customer strategy, techniques, formulations, technical information, technical know-how, formulae, production information, inventions, invention disclosures, discoveries, drawings, invention methods, systems, information regarding all or any portion of the Fortive Business System, lease structure, processes, designs, plans, architecture, prototypes, models, software, source code, object code, solutions, Talent Reviews and Organizational Plans, research and development, copyrights, patent applications, and plans or proposals related to the foregoing.

30.    The RCA further provides at Section 3 that during and after termination of Wisdom's employment with the Company, she would not, "without the Company's prior written permission, directly or indirectly for any purpose other than performance of [her] duties for the Company . . . . utilize or disclose to anyone outside of the Company any Confidential Information, or any information received by the Company in confidence from or about third parties, as long as such matters remain trade secrets or confidential."

31.    Section 4 of the RCA also requires Wisdom to return all Company property "upon the request of the Company and in any event promptly upon termination of [her] employment or relationship with the Company, but in any event no later than two (2) business days after such termination," and further prohibits her from retaining "any original or copies of such materials, whether in hard copy form or as computerized and/or electronic records." She also agreed, except

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 8

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

as "approved by the Company or required by [her] bona fide job duties for the Company . . . not [to] copy or remove from the Company's place of business . . . property or information belonging to the Company . . . ." and further agreed not to "provide any such materials to any competitor of or entity seeking to compete with the Company unless specifically approved in writing by the Company."

32.     Section 5 of the RCA also prohibits Wisdom, "during the Restricted Period," from directly or indirectly working in the "Restricted Territory for any person, company, or entity that sells Competing Products in any role that involves: (i) selling, or assisting others in selling, Competing Products; (ii) developing or implementing strategies to compete with the Company with respect to Competing Products; (iii) directly or indirectly supervising or managing employees or other personnel who compete with the Company with respect to Competing Products; (iv) participating in the planning, research, or development of Competing Products; (v) utilizing or disclosing Confidential Information; or (vi) engaging in duties or responsibilities that are related to Competing Products and that are similar to those [she] performed for the Company during the Pre-Termination Period."

33.     "Restricted Period" is defined in the RCA as "the period of time during [Wisdom's] employment or relationship with the Company and for a period of 12 months thereafter. The Restricted Period shall be extended to two (2) years following termination of [Wisdom's] employment or relationship with the Company if [she] breach[es] [her] fiduciary duties to the Company and/or commit[s] an unlawful taking, physically or electronically, of property belonging to the Company."

34.     "Restricted Territory" is defined in the RCA as "any state, territory, or province within the United States of America or any other country (or political submission thereof) (i) in which [Wisdom] performed services for the Company during the Pre-Termination Period; (ii) over which [she] had sales or management responsibilities for the Company during the Pre-Termination Period; (iii) in which the Company employed or engaged personnel [she] directly or indirectly

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 9

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

supervised or managed during the Pre-Termination Period; or (iv) about which [she] had access to Confidential Information during the Pre-Termination Period."

35.     "Competing Products" is defined in the RCA as "(i) products or services similar to or competitive with the products or services sold by the Company for which [Wisdom] had any responsibility during the Pre-Termination Period and (ii) products or services similar to or competitive with any prospective product or service the Company took steps to develop and for which [she] had any responsibility during the Pre-Termination Period."

36.     "Pre-Termination Period" is defined in the RCA as "the 24 months preceding the termination of [Wisdom's] employment or relationship with the Company."

37.     The RCA also contains customer and employee non-solicitation obligations, vendor non-interference obligations, a non-disparagement clause, and other provisions designed to protect the Company's intellectual property, at Sections 6-9 and 12-14.

38.     Section 11 of the RCA requires Wisdom to provide a copy of the RCA to any subsequent employers for a period of 3 years following termination of her employment.

39.     The RCA provides at Section 16 that in the event of a breach or a threatened breach of the RCA, Wisdom acknowledged and agreed that "the Company will face irreparable injury which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy." Wisdom therefore agreed that the Company would "be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions without the posting of a bond enjoining such breach or threatened breach."

40.     Section 16 of the RCA also provides that the Company will be entitled to recover from Wisdom its reasonable attorneys' fees, litigation expenses, and costs incurred as a result of successfully enforcing any portion the RCA against her.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 10

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

41.     Section 16 of the RCA also contains a provision that tolls the non-compete, non-solicitation, and non-interference restrictions for any period of time that Wisdom is in violation thereof.

42.     Section 17 of the RCA contains a provision that permits "the trier of fact [to] modify any invalid, overbroad or unenforceable term" of the RCA "so that such term, as modified, is valid and enforceable under applicable law."

**V.     Wisdom's Resignation**

43.     On January 12, 2021, Wisdom informed the Company that she was accepting a position with Leighton O'Brien, Inc. ("LOI"), a direct competitor to Insite360. Wisdom represented to several Company employees, including Collins, Snow, and all of Wisdom's direct reports, that her anticipated role with LOI was non-competitive. Specifically, she claimed that her role for LOI would be limited to selling and scaling field services such as tank cleaning and calibration solutions, which was not within her responsibilities for Insite360. She further represented that she would not be focused on North American sales, but rather would be primarily focused elsewhere.

44.     For example, Wisdom specifically mentioned Southeast Asia as a new territory where she would be focused, to demonstrate that her new role was global in nature and not focused on North America. Wisdom had never performed services for Insite360 in Southeast Asia; her responsibilities for the Company were focused on growing North American sales, as other regional sales teams were responsible for regions such as Southeast Asia and Europe.

45.     Wisdom also shared that she was "excited to learn something new," again giving the impression that her role would not overlap with her past responsibilities for the Company.

46.     Wisdom also informed Insite360 that Reed Leighton ("Leighton"), the CEO of LOI, would be willing to provide written assurances of the non-competitive nature of her anticipated role.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 11

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

47.     Given Wisdom's assurances that her anticipated role with LOI would not be competitive, either in the services she would be performing or in the territory she would be based in, Insite360 permitted her to remain with the Company for approximately 3 weeks, through February 1, 2021, to facilitate off-boarding and transitioning her responsibilities to others. Had the Company known that Wisdom's role with LOI would be directly competitive, it would have immediately exited her and shut off her access to confidential information.

**VI.     Insite360's Discovery of Wisdom's Deception**

48.     On February 1, 2021, when Wisdom was still employed by the Company, LOI issued a press release, which was dated February 2, 2021, regarding Wisdom's hire. Contrary to what Wisdom had told the Company on several occasions, the press release described her role with LOI as directly competitive in North America.

49.     For example, despite having told Insite360 that she would be selling field services, the press release indicated that Wisdom would operate as LOI's Executive Vice President of its Data Analytics Solutions division. The press release touted her experience as a "leading software executive in the downstream petroleum industry," and further stated that she would be: "responsible for global sales management, driving revenue growth, new product adoption and ensuring maximum return on investment on Leighton O'Brien's data analytics solutions portfolio for customers." The press release's reference to "data analytics solutions" included a hyperlink to LOI's website regarding its Wetstock Live offering. The press release also quoted Leighton as saying that Wisdom's hire was "a huge boost to our Data Analytics Solutions business. With her pedigree in software sales in the industry I have no doubt Angela will dramatically increase our **US sales capability**, velocity and revenue. . . . "  (emphasis added). A copy of this press release is attached here as Exhibit 3. Notably, the press release said nothing about any responsibility Wisdom would have in Asia.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 12

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

50.     Upon information and belief, given that the press release was issued while she was still an Insite360 employee, Wisdom knew while she was still employed with the Company that her job was directly competitive and a violation of her RCA.

**VII.   Insite360's Correspondence With Wisdom and LOI**

51.     In light of the press release, which revealed that Wisdom had not only lied about the nature of her role with LOI, but also revealed that her new role would be directly competitive and a violation of her RCA, Insite360 sent Wisdom a letter on February 3, 2021 reminding her of her continuing obligations to the Company, and asking her to confirm that her new role would not be competitive (as she had previously represented). Insite360 attached a draft certification to the letter, which it asked Wisdom to sign and return by February 5, 2021. The certification stated, among other things, that Wisdom had not retained or used any confidential Company information. A true and accurate copy of the letter sent to Wisdom is attached here as Exhibit 4. Wisdom never responded.

52.     The following morning, February 4, 2021, the Company also sent a copy of the letter to Leighton, LOI's CEO. In response, Leighton wrote to Collins twice. First, he stated, "We'll send one back for Greg Salverson. Really?"

53.     Salverson is an Insite360 employee who had previously been employed by LOI. Salverson first reached out to the Company in February of 2020 seeking a potential role. After several months of consideration, in the fall of 2020, Insite360 made Salverson an offer in a non-customer-facing role, so that he would not be in a competitive role to his LOI position, and as such would have no reason to use (whether intentionally or inadvertently) LOI's confidential information.

54.     Unlike Wisdom, Salverson did not have a non-compete agreement, and in fact to the Company's knowledge and based on its research, he had no restrictive covenants at all. Despite this, Insite360 still chose to keep Salverson out of a commercial sales leadership role. The

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

1   Company also waited to extend a formal offer to Salverson until he confirmed with Leighton that

2   he was exploring other opportunities, and received Leighton's support.

3        55.    Collins was surprised by Leighton's reference to Salverson in his February 4, 2021

4   email, based on her previous amicable conversations with Leighton. For example, on October 16,

5   2020, shortly after Salverson accepted Insite360's offer, Leighton reached out to Collins and

6   Wisdom. In that email, he stated:

7          Greg just shared his news. You've grabbed a great person in Greg. We've
          been  lucky to have him for 6 years.

8          No bad feelings from us, some things just come to a natural end.

9

10  A copy of this email and Collins's response is attached here as Exhibit 5. In light of Leighton's

11  October 2020 email, as well as the parties' previously cordial relationship, Collins was surprised

12  and taken aback by his reference to Salverson upon receiving the Company's letter regarding

13  Wisdom.

14       56.    Leighton also responded in a separate email to Collins a few hours later, threatening

15  to bring claims against the Company based on alleged conduct by Salverson. In response, the

16  Company asked Leighton to direct any further communications to its outside counsel, who was

17  copied on the email. Leighton responded, "Since when did I report to you? We'll do what we

18  decide not what you decide." A copy of this email exchange is attached here as Exhibit 6.

19       57.    Despite the fact that Wisdom had never responded to the Company's February 3,

20  2021 letter by February 5, 2021 as requested, Collins tried to defuse the situation by emailing

21  Wisdom the following week. Collins requested that Wisdom call her on February 12, 2021 to

22  discuss the matter and hopefully find a resolution without matters escalating further. Yet again,

23  Wisdom never responded to this overture.

24       58.    On February 17, 2021, Collins learned that Leighton had reached out by email to

25  her boss, the President of Gilbarco Inc., which was then forwarded to Collins. Leighton's email

26  stated that LOI was "willing to make a reasonable deal" and stated that neither LOI nor Wisdom

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 14

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

would "poach" Insite360's customers or staff, and that Wisdom would not share confidential information with LOI. Leighton stated that he would "swear on a stack of golf magazines to testify to this," and said that Insite360 should agree to the same parameters for Salverson, again ignoring that Salverson was not bound by a non-compete like Wisdom was.

59.     In that same email, Leighton admitted that Wisdom's territory for LOI included North America, and that it involved "all of our products (testing and cleaning and *software*)" (emphasis added). Leighton concluded his email by stating that the parties were in "a very small industry community and this matter is already public. It is in both our interests that it be resolved quickly and amicably and short of a judge in a public forum making that decision for both of us."

60.     Notwithstanding Leighton's statements implying that he was trying to de-escalate the parties' dispute, Collins found it unfortunate that he would go over her head to her boss at Gilbarco, when he knew that Collins was intimately involved and overseeing the parties' dispute (and her boss was not involved). Collins also found his statements about the small industry to be somewhat threatening.

61.     In sum, rather than reflecting a "reasonable deal," Leighton's antagonistic emails and attempts to go over Collins's head only exacerbated the tension between the parties, and his attempts to tie Salverson's hire to LOI's hire of Wisdom was not reasonable in light of the stark differences in circumstances of those hires.

## VIII.   The Parties' Attempts to Settle Their Dispute

62.     After Insite360's letter to Wisdom went unanswered, its outside counsel, Steve Brown ("Brown"), worked with counsel for Wisdom and LOI, Marcus Eason ("Eason"), to try to resolve this dispute. While much of the correspondence between the parties' outside counsel constituted confidential settlement communications, Eason's representations and offers certainly led the Company to believe that his clients were willing to reach a mutually-agreeable resolution to the parties' dispute, without requiring judicial intervention. As a result of the continuing discussions between the parties' counsel, as well as Leighton's February 17, 2021 email to

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 15

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

Gilbarco that it was in the parties' interests to resolve the matter out of the courtroom, Insite360 believed that the parties would be able to come to a negotiated resolution. As a result, and based upon Eason's representations, the Company did not file suit to enforce its rights.

63.     However, upon information and belief, Wisdom and LOI never intended to resolve this dispute amicably, and were only stringing Insite360 along while they prepared papers seeking a declaratory judgment that the RCA is unenforceable.

64.     On February 25, 2021, without any warning to Insite360, Wisdom filed a declaratory judgment action in King County Superior Court naming Insite360 as a defendant, which was procedurally improper.

65.     After Wisdom filed her suit, Eason told Brown that he believed that Leighton had reached out to the Company the week before the lawsuit was filed to let Insite360 know it would be filed.

66.     Leighton had not reached out to Collins to put her on notice of the impending suit, nor, upon information and belief, did he reach out to anyone else at Insite360 to put them on notice. In addition, as Eason had assured Brown that Leighton would not have any direct contact with Company employees following his February 17, 2021 email to Collins's boss, it is unclear why he assumed that Leighton would have reached out to anyone at Insite360.

67.     Given that the parties were involved in active settlement negotiations to try to find a reasonable agreement that would permit Wisdom to work for LOI in a way that would not jeopardize Insite360's confidential information and other business interests – which negotiations the Company believed were progressing toward an amicable resolution – Collins was surprised that without any warning whatsoever, Wisdom filed her lawsuit seeking a declaration that the RCA was unenforceable.

68.     On March 4, 2021, Collins was personally served with a copy of the lawsuit at her home, despite not being a named party to the suit, and not being an authorized agent for service.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 16

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

**IX.    Wisdom's Access to Confidential Information Following Her Resignation**

69.    Wisdom's RCA required her to return her company-issued devices promptly upon termination of her employment, and in no event later than two business days after her termination (February 1, 2021). Eason represented to Brown that Wisdom had mailed her company-issued devices back to Insite360 the week before her last day as an employee.

70.    However, based on tracking information that Eason provided to Brown, Wisdom did not mail her devices back until February 4, 2021, several days *after* her employment with the Company terminated. The Company did not receive the devices until February 9, 2021, more than a week after her employment ended. Insite360 then sent the devices to an outside forensic examiner, Derek Ellington ("Ellington"), to conduct an analysis of the devices.

71.    Ellington's forensic examination of the company-issued iPad revealed that Wisdom had performed a factory reset of the device on February 3, 2021, in violation of her RCA. Wisdom never asked or received permission to do so, and it is incredibly rare for departing employees to do so. Upon information and belief, Wisdom conducted the factory reset of the iPad to destroy evidence of her misconduct.

72.    In addition, Ellington's examination of the company-issued MacBook Pro laptop revealed certain activity in the weeks leading up to Wisdom's last day that suggests that she may have copied, forwarded, or uploaded documents from that computer to cloud storage, personal accounts, or some other device. For instance, Ellington's examination revealed that on several occasions in Wisdom's final weeks with the Company, hundreds of documents had metadata altered within an extremely short timeframe, suggesting that they were mass copied, deleted, or "backed up" to another device.

73.    As a result, Insite360 has reasonable concerns that Wisdom may have improperly accessed, copied, shared, or retained confidential Insite360 information before she returned her computer to the Company.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 17

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

74.     The RCA also prohibited Wisdom from retaining any copies of Company materials, whether in hard copy or electronic form, following termination of her employment. However, on February 19, 2021, Eason provided Brown with 15 Insite360 documents, which Eason represented had been copied to Wisdom's personal computer.

75.     The documents that Eason had provided from Wisdom's personal computer contain highly sensitive Insite360 information that would be extremely useful to a competitor like LOI. Included in the documents were confidential information regarding hundreds of the Company's customers, including revenue received for said customers, contract terms, which products or services the customers had purchased, and which Insite360 sales executives were assigned to those customers; compensation data for the Company's account executives, renewal executives, and other specialists, including compensation structure, commissions, and quotas; information regarding the Company's territories; information regarding the Company's pipeline, including specific opportunities with prospects, which products were being pitched, stage of contract negotiations, and anticipated contract value; and the Company's growth goals for 2021.

76.     All of this information would be highly valuable to a competitor like LOI. For example, LOI could use the information from these files to determine which Insite360 prospects are most ripe for solicitation by LOI, and could try to undercut Insite360's pricing. In addition, LOI could use the compensation details in the documents retained by Wisdom to try to solicit Insite360 sales executives. Given Wisdom's refusal to provide a certification regarding her retention and use of Insite360's confidential information, the Company is concerned that Wisdom still has access to these documents, may be using them in connection with her employment with LOI, and/or has disclosed them to others at LOI.

77.     In addition, Eason had initially represented to Brown that Wisdom had retained the documents because she needed to access them on her personal computer to work on matters that had been assigned to her by Collins or Snow, because (as Eason represented), Wisdom had sent back her company-issued devices early.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 18

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

78.     This is not true. Neither Collins nor Snow ever asked Wisdom to perform any work after her employment ended. Moreover, neither Collins nor Snow ever asked Wisdom to do anything either before her employment with the Company ended that would have required her to keep confidential Company documents on her personal computer. Indeed, despite Eason's claims, Wisdom did not return her devices until several days *after* her employment with Insite360 had ended.

79.     To the extent Wisdom claims that she accessed those documents in connection with her employment with Insite360, she could have – and should have – accessed them on her company-issued electronic devices, which were in her possession until she returned them in February. There is simply no reason why Wisdom should have had this information on her personal computer.

**X.     Irreparable Harm**

80.     If Wisdom is permitted to continue in her current role for LOI, Insite360's legitimate business interests would be irreparably harmed.

81.     As noted above, the documents that Wisdom had – for no legitimate reason – on her personal computer contained highly confidential Insite360 information that could be exploited by a competitor such as LOI, not only to solicit the Company's customers or employees, but also to unfairly undercut the Company in the market.

82.     In addition, even assuming Wisdom never used those documents or disclosed them to anyone else at LOI, and has no plans to do so, by virtue of her role for Insite360, she had access to a wide swath of highly confidential and trade secret information belonging to Insite360. As noted above, Wisdom is intimately familiar with Insite360's business strategy plans, sales strategies, pricing plans and information, pipeline, customer information (including which customers had purchased which services), information regarding prospects (including details of anticipated deals, and how far along each prospective deal was), marketing strategies, strengths and weaknesses of various Insite360 products and services, and more.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 19

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

83.     Even if Wisdom does not intend to use this information in connection with her role for LOI, it will be difficult if not impossible for her to sell the same sort of products and services, in the same territory, without necessarily drawing upon the information in her head. In fact, this is the exact reason why Insite360 asked Wisdom to sign the RCA in July of 2019. Insite360 would not have permitted Wisdom to continue to work for the Company, especially given the substantial increase in her compensation, had it not secured her agreement not to provide competitive services in the territory she serviced for a year after leaving Insite360's employ.

84.     In addition, Wisdom has confidential information that could assist LOI in partnership discussions with others in the industry. For example, in December of 2020, Wisdom became intimately involved in Insite360's partnership discussions with a third party competitor of both Insite360 and LOI. In fact, Wisdom took responsibility for establishing the agenda and objectives for a 2-day, in-person meeting with the competitor to discuss whether the companies could partner to provide complementary services to their customers. This meeting occurred on December 8-9, 2020. Wisdom attended the meeting, along with several others from Insite360, including Collins herself.

85.     Wisdom would not typically be involved in early stage discussions (either setting agenda items or attending the in-person meeting) such as those that occurred in December 2020. Wisdom was not a core part of the Business Development team and several other partnerships were established in 2020 without any participation from Wisdom at all. With respect to this potential partnership, Wisdom requested to participate in discussions, which was not customary given the early stage of the parties' discussions.

86.     Upon information and belief, at the time the meeting with the competitor occurred, Wisdom was already entertaining LOI's offer. On December 7, 2020, the night before the aforementioned meetings with the third party competitor, Wisdom told Collins and others that LOI had reached out to her with a job opportunity, but when she mentioned this, she brushed it off and chuckled about it. As a result, the Company had no idea that she was actually considering leaving

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 20

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

1   for LOI. However, given that she submitted her resignation in early January 2021, on information

2   and belief, Wisdom was discussing LOI's offer throughout November and December 2020 – when

3   she was setting Insite360's agenda and objectives for the negotiations with the third party

4   competitor and attending the companies' meeting.

5        87.    If Wisdom was actively negotiating her role with LOI at that time, it is extremely

6   concerning that she took on responsibility for and participated in these discussions, particularly

7   given that the Company had ample representation from other executives, including Collins. The

8   information that she learned as a result of those discussions could provide LOI with competitive

9   intelligence to allow it to strike a better partnership deal with the third party (or other potential

10  partners in the industry).

11       88.    Insite360 has never claimed that Wisdom cannot work for LOI. In fact, when

12  Wisdom first notified the Company of her intent to join LOI, Insite360 was supportive of her

13  decision, based on her representations that her role would not be competitive either in her job

14  responsibilities or territory.

15       89.    Insite360 remains willing to permit Wisdom to work for LOI, provided her role is

16  not competitive to the services she provided to the Company, and provided Wisdom and LOI can

17  otherwise provide adequate assurances that Insite360's legitimate business interests will be

18  protected.

19                                    **COUNT I**
                              **Breach of the RCA**
20                               **(Against Wisdom)**

21       90.    VRFQ incorporates by reference the allegations contained in the preceding

22  paragraphs of this Complaint.

23       91.    On or about July 24, 2019, VRFQ and Wisdom entered into the RCA.

24       92.    The RCA is supported by adequate consideration.

25       93.    VRFQ has performed all of its obligations under the RCA.

26

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 21

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

94.     The restrictive covenants in the RCA are narrowly tailored and no broader than necessary to protect VRFQ's legitimate business interests, including but not limited to its goodwill, customer relationships, and confidential and proprietary business information.

95.     The restrictive covenants are reasonable as to scope, duration of time, and geographic reach.

96.     Through the acts described above, Wisdom has breached her obligations under the RCA by accepting employment with LOI, a direct competitor of VRFQ, in a role that is directly competitive with her former duties and responsibilities for VRFQ.

97.     Wisdom has also breached her obligations under the RCA by, upon information and belief, retaining VRFQ's confidential, proprietary, and/or trade secret information on her personal devices and/or accounts following termination of her employment with VRFQ.

98.     Wisdom has also breached her obligations under the RCA by, upon information and belief, using and/or disclosing VRFQ's confidential, proprietary, and/or trade secret information in connection with her employment or anticipated employment with LOI.

99.     Wisdom has also breached her obligations under the RCA by failing to return her company-issued electronic devices within two (2) business days of termination of her employment with VRFQ.

100.    Wisdom has also breached her obligations under the RCA by purposefully destroying Company data on the company-issued iPad before she returned it.

101.    Unless enjoined from further breaching the RCA, Wisdom's conduct will cause substantial, immediate, and irreparable injury, damage, and loss to VRFQ in an amount that cannot presently be determined and/or cannot be fully quantified.

102.    Wisdom's actual or threatened use of VRFQ's confidential, proprietary, and/or trade secret information enables her and LOI to unfairly compete with VRFQ, without expending the same time, effort, or expense to develop the same.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 22

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

103.    Moreover, there is no way for VRFQ to determine at this point how much business it will lose over time because of Wisdom's unlawful conduct.

104.    VRFQ is entitled to, and hereby requests, specific performance by Wisdom of her contractual obligations under the RCA.

105.    In addition, VRFQ seeks actual, incidental, compensatory, punitive, and consequential damages, as well as its reasonable attorneys' fees in enforcing the RCA, in an amount to be determined at trial.

**COUNT II**
**Breach of the NDA**
**(Against Wisdom)**

106.    VRFQ incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    On or about October 28, 2017, VRFQ and Wisdom entered into the NDA.

108.    The NDA is supported by adequate consideration.

109.    VRFQ has performed all of its obligations under the NDA.

110.    The restrictive covenants in the NDA are narrowly tailored and no broader than necessary to protect VRFQ's legitimate business interests, including but not limited to its goodwill, customer relationships, and confidential and proprietary business information.

111.    The restrictive covenants in the NDA are reasonable as to scope, duration of time, and geographic reach.

112.    Through the acts described above, Wisdom has breached her obligations under the NDA by, upon information and belief, retaining VRFQ's confidential, proprietary, and/or trade secret information on her personal devices and/or accounts following termination of her employment with VRFQ.

113.    Wisdom has also breached her obligations under the NDA by, upon information and belief, using and/or disclosing VRFQ's confidential, proprietary, and/or trade secret information in connection with her employment or anticipated employment with LOI.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 23

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

114.     Unless enjoined from further breaching the NDA, Wisdom's conduct will cause substantial, immediate, and irreparable injury, damage, and loss to VRFQ in an amount that cannot presently be determined and/or cannot be fully quantified.

115.     Wisdom's actual or threatened use of VRFQ's confidential, proprietary, and/or trade secret information enables her and LOI to unfairly compete with VRFQ, without expending the same time, effort, or expense to develop the same.

116.     Moreover, there is no way for VRFQ to determine at this point how much business it will lose over time because of Wisdom's unlawful conduct.

117.     VRFQ is entitled to, and hereby requests, specific performance by Wisdom of her contractual obligations under the NDA.

118.     In addition, VRFQ seeks actual, incidental, compensatory, punitive, and consequential damages, as well as its reasonable attorneys' fees in enforcing the NDA, in an amount to be determined at trial.

## COUNT III
### Violation of the Washington Uniform Trade Secrets Act
**(Against Wisdom)**

119.     VRFQ incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

120.     VRFQ's business, sales, and marketing plans; pricing plans and information; customer information (including which customers had purchased which services); information regarding prospects (including details of anticipated deals, and how far along each prospective deal was); development plans; information regarding strengths and weaknesses of certain Insite360 products and services; in-depth incentive and commission program information; and other information to which Wisdom had access all constitute business information and/or compilations of information that derive independent actual value or potential commercial value from not being generally known or readily ascertainable through independent development by persons who can obtain economic value from its disclosure or use.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 24

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

121.    VRFQ has made reasonable efforts under the circumstances to maintain the secrecy of the aforementioned information.

122.    The aforementioned information constitutes "trade secrets" under the Washington's Uniform Trade Secrets Act, § 19.108.010 et seq. (the "WUTSA").

123.    Wisdom's conduct with respect to VRFQ's trade secrets constitutes actual and/or threatened misappropriation in violation of the WUTSA.

124.    Wisdom's conduct has caused and, unless enjoined, will continue to cause, substantial, immediate, and irreparable injury to VRFQ's legitimate business interests.

125.    VRFQ has no adequate remedy at law to redress Wisdom's violation of the WUTSA.

126.    VRFQ has suffered and will continue to suffer damages as a result of Wisdom's misappropriation of VRFQ's trade secrets.

127.    VRFQ's damages include, without limitation, lost profits through the present and in the future from lost sales, lost growth opportunities, lost margins on retained business and other damages.

128.    Wisdom has been unjustly enriched as a result of her misappropriation of VRFQ's trade secrets.

129.    Wisdom's conduct described above is willful and malicious, such that an award of exemplary damages pursuant to Wash. Rev. Code § 19.108.030 and an award of attorneys' fees is appropriate.

**COUNT IV**
**Violation of the Defend Trade Secrets Act**
**(Against Wisdom)**

130.    VRFQ incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

131.    VRFQ's business, sales, and marketing plans; pricing plans and information; customer information (including which customers had purchased which services); information

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 25

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

regarding prospects (including details of anticipated deals, and how far along each prospective deal was); development plans; information regarding strengths and weaknesses of certain Insite360 products and services; in-depth incentive and commission program information; and other information to which Wisdom had access all constitute business information and/or compilations of information that derive independent actual value or potential commercial value from not being generally known or readily ascertainable through independent development by persons who can obtain economic value from its disclosure or use.

132.    VRFQ has made reasonable efforts under the circumstances to maintain the secrecy of the aforementioned information.

133.    The aforementioned information constitutes "trade secrets" under the Defend Trade Secrets Act, 18 U.S. C. § 1836, et seq. (the "DTSA").

134.    Wisdom's conduct with respect to VRFQ's trade secrets constitutes actual and/or threatened misappropriation in violation of the DTSA.

135.    Wisdom's conduct has caused and, unless enjoined, will continue to cause, substantial, immediate, and irreparable injury to VRFQ's legitimate business interests.

136.    VRFQ has no adequate remedy at law to redress Wisdom's violation of the DTSA.

137.    VRFQ has suffered and will continue to suffer damages as a result of Wisdom's misappropriation of VRFQ's trade secrets.

138.    VRFQ's damages include, without limitation, lost profits through the present and in the future from lost sales, lost growth opportunities, lost margins on retained business and other damages.

139.    Wisdom has been unjustly enriched as a result of her misappropriation of VRFQ's trade secrets.

140.    Wisdom's conduct described above is willful and malicious, such that an award of exemplary damages and attorneys' fees under the DTSA is appropriate.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 26

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

**COUNT V**
**Tortious Interference With Contract**
**(Against LOI)**

141.     VRFQ incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

142.     As set forth above, Wisdom's RCA is a valid and enforceable contract. The post-employment activity covenants, confidentiality covenants, and other provisions contained in the RCA are reasonable in scope and duration and are reasonably necessary to protect VRFQ's legitimate protectable interests in its employee relationships, client relationships, and its confidential information, as well as its goodwill.

143.     Upon information and belief, LOI was fully aware of the RCA prior to hiring Wisdom, given Wisdom's contractual obligations to provide a copy of the RCA to any subsequent employers. Additionally, LOI was aware of the RCA by no later than February 4, 2021 when VRFQ provided LOI with a copy of its letter to Wisdom demanding that she confirm her role with LOI was not directly competitive and further demanding that she certify that she had not used, disclosed, shared, or otherwise disseminated VRFQ's confidential information.

144.     Despite having knowledge of the RCA, LOI intentionally induced, permitted or incentivized Wisdom to violate the post-employment and contractual obligations owing to VRFQ, without justification, in an effort to unfairly compete with VRFQ.

145.     VRFQ believes LOI's intentional interference was willful, malicious, unjustified and accomplished through wrongful means, including but not limited to, inducing, aiding or abetting Wisdom to each breach her contract with VRFQ and otherwise violate the law, and using threats of retaliation for VRFQ's lawful hire of Salverson. VRFQ further believes that LOI's intentional interference was accomplished for an improper purpose, as evidenced by its ill motive demonstrated through its illegitimate threats of litigation regarding Salverson.

146.     As a result of LOI's intentional interference, VRFQ has suffered irreparable and other significant injuries in an amount to be determined at trial.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 27

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

**PRAYER FOR RELIEF**

WHEREFORE, VRFQ seeks judgment in its favor and an Order against Defendants that grants the following relief:

A.      Temporarily, preliminarily and permanently enjoining Defendants Wisdom and LOI and all parties in active concert or participation with them, from using or disclosing any of VRFQ's confidential and/or proprietary information;

B.      Temporarily and preliminarily enjoining Defendant Wisdom from performing services for LOI in a role that is competitive to the role she previously performed for VRFQ;

C.      Ordering Defendants Wisdom and LOI and all parties in active concert or participation with them, to return to VRFQ all originals and copies of all files, devices and/or documents that contain or relate to VRFQ's confidential and proprietary information, including without limitation, all computers, electronic media, PDAs and electronic storage devices;

D.      Ordering Defendants Wisdom and LOI and all parties in active concert or participation with them, to preserve all documents, data, and electronic information and to produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by Wisdom;

E.      Awarding VRFQ actual, incidental, compensatory, and consequential damages to be proven at trial;

F.      Awarding VRFQ exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

G.      Awarding VRFQ its costs and expenses incurred herein, including reasonable attorneys' fees and interest, pursuant to the Washington Uniform Trade Secret Act, REV. CODE WASH. § 19.108.010, *et seq.*;

H.      Awarding VRFQ its costs and expenses incurred herein, including reasonable attorneys' fees and interest, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836;

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 28

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

1        I.      Awarding VRFQ its costs and expenses incurred herein, including reasonable

2  attorneys' fees, as provided by the RCA; and

3        J.      Awarding VRFA such further relief as the Court deems necessary and just.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 29

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1

1    DATED: March 15, 2021                    SEYFARTH SHAW LLP

2
                                        By: *s/ Helen M. McFarland*
3                                           Helen M. McFarland, WSBA 51012
                                            999 Third Avenue, Suite 4700
4                                           Seattle, WA 98104
                                            P: (206) 946-4923
5                                           F: (206) 260-8839
                                            hmcfarland@seyfart.com
6
                                            Katherine E. Perrelli (*pro hac vice*
7                                           pending)
                                            Dawn Mertineit (*pro hac vice* pending)
8                                           Two Seaport Lane, Suite 300
                                            Boston, MA 02210
9                                           P: (617) 946-4800
                                            F: (617) 946-4801
10                                          kperrelli@seyfarth.com
                                            dmertineit@seyfarth.com
11
                                            *Attorneys for Plaintiff Veeder-Root*
12                                          *FuelQuest, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 30

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

68646250v.1