The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VEEDER-ROOT FUELQUEST, LLC,<br><br>Plaintiff,<br>v.<br><br>ANGELA WISDOM, an individual, and LEIGHTON O'BRIEN, INC., a corporation,<br><br>Defendants. | Civil Action No. 2:21-cv-00352-RAJ<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Veeder-Root Fuelquest LLC's ("Plaintiff") motion for temporary restraining order against Defendants Angela Wisdom and Leighton O'Brien, Inc.[1] ("LOI") (collectively "Defendants"). Dkt. # 3. The Court

---

[1] Defendants contend that LOI is not Ms. Wisdom's employer and is therefore an improper party to this case. Dkt. # 20 at 1. Plaintiff responded in oral argument that it

ORDER - 1

held a hearing on the motion on March 24, 2021. Having considered the parties' oral and written arguments, the record, and applicable law, the Court **DENIES** Plaintiff's motion for a temporary restraining order and **GRANTS** Plaintiff's request for a hearing on a preliminary injunction.

## II. BACKGROUND

Plaintiff is a fueling software and solutions provider in the retail and wholesale fueling industry. Dkt. # 1 ¶ 14. Ms. Wisdom was hired by Plaintiff as a Senior Director of Sales in the fall of 2017. *Id.* ¶ 20. In May of 2020, her role was expanded to include marketing responsibilities. *Id.* As a result of her responsibilities and duties, Plaintiff alleges that Ms. Wisdom had access to Plaintiff's "confidential, proprietary, and trade secret information, " which included, but was not limited to the following:

> business strategy plans, sales strategies, pricing plans and information, the Company's pipeline, customer information (including which customers had purchased which services) information regarding prospects (including details of anticipated deals, and how far along each prospective deal was), marketing strategies, development plans, strengths and weaknesses of certain Insite360 products and services, in-depth incentive and commission program information giving visibility into how the Company creates the necessary behaviors to drive growth, and more.

*Id.* ¶ 22.

When first hired, Ms. Wisdom signed a Nondisclosure and Assignment Agreement ("NDA") on or about October 28, 2017. *Id.* ¶ 22. The NDA prohibited Ms. Wisdom from directly or indirectly using or disclosing to anyone outside the company any of Plaintiff's trade secrets or confidential information, including customer lists, pricing, margins, and more. *Id.* ¶ 23. In mid-2019, Ms. Wisdom executed a new restrictive

---

would amend its complaint accordingly, but that it sought to enjoin Ms. Wisdom, who is a named defendant, for purposes of this motion. The Court will consider this motion with respect to an injunction against Ms. Wisdom, but instructs the parties to amend the complaint to include the proper defendants.

ORDER - 2

covenants agreement ("RCA") with Plaintiff in exchange for, inter alia, an increase in salary and equity.  *Id.* ¶ 24-26.

On January 12, 2021, Ms. Wisdom informed Plaintiff that she was accepting a position with Leighton O'Brien, Inc. ("LOI"), a direct competitor to Plaintiff, but represented that her role was non-competitive with respect to the products she would be selling and the territory in which she would be active.  *Id.* ¶ 43.  Plaintiff permitted Ms. Wisdom to remain in her job for three weeks, until February 1, 2021, to facilitate off-boarding and transition her responsibilities.  *Id.* ¶ 47.

On February 1, 2021, LOI issued a press release dated February 2, 2021 announcing Ms. Wisdom's hire and describing her role as directly competitive with her role with Plaintiff.  *Id.* ¶ 48.  On February 3, 2021, Plaintiff sent Ms. Wisdom a letter reminding her of her continuing obligations to Plaintiff and requesting that she sign and return a draft certification confirming that her role would not be competitive.  *Id.* ¶ 51. The following day, Plaintiff sent a copy of the letter to Reed Leighton, CEO of LOI.  *Id.* ¶ 52.  Mr. Wisdom did not respond to Plaintiff's letter.  *Id.* ¶ 57.  The following week, Plaintiff's General Manager and Vice President, Rachel Collins, emailed Ms. Wisdom asking her to call her to discuss the matter.  *Id.* ¶ 20, 57.  Ms. Wisdom did not respond. *Id.* ¶ 57.

On February 4, 2021, several days after her employment with Plaintiff ended, Ms. Wisdom mailed her company-issued devices back to Plaintiff.  *Id.* ¶ 70.  Her RCA required her to return the devices promptly upon termination of her employment and no later than two business days after termination.  *Id.* ¶ 69.  After receiving the devices on February 9, 2021, Plaintiff sent them to an external forensic examiner to conduct an analysis of each device.  *Id.* ¶ 70.

The forensic examination revealed that Ms. Wisdom had performed a factory reset of her computer on February 3, 2021.  *Id.* ¶ 71.  According to the examiner, the analysis

ORDER - 3

also revealed "hundreds of documents had metadata altered within an extremely short timeframe, suggesting that they were mass copied, deleted, or 'backed up' to another device" on several occasions during Ms. Wisdom's final weeks with Plaintiff. *Id.* ¶ 72. The documents alleged included the following:

> [C]onfidential information regarding hundreds of the Company's customers, including revenue received for said customers, contract terms, which products or services the customers had purchased, and which [Plaintiff] sales executives were assigned to those customers; compensation data for the Company's account executives, renewal executives, and other specialists, including compensation structure, commissions, and quotas; information regarding the Company's territories; information regarding the [Plaintiff's] pipeline, including specific opportunities with prospects, which products were being pitched, stage of contract negotiations, and anticipated contract value; and the [Plaintiff's] growth goals for 2021.

*Id.* ¶ 75.

Ms. Wisdom had retained internal documents from Plaintiff and saved them on her personal work computer, alleging that she had been asked to work after her employment and that she needed to keep confidential company documents on her personal computer for that purpose. *Id.* ¶ 77. Plaintiff disputes both of these statements. *Id.* ¶ 78.

Plaintiff's outside counsel worked with counsel for Ms. Wisdom and LOI to try to resolve the dispute. *Id.* ¶ 63. On February 24, 2021, without notice to Plaintiff, Ms. Wisdom filed a declaratory judgment action in King County Superior Court naming Plaintiff as a defendant. *Id.* ¶ 64. On March 4, 2021, Ms. Collins was personally served with a copy of the lawsuit at her home, even though she was not a named party to the suit nor was she an authorized agent for service. *Id.* ¶ 68.

On March 15, 2021, Plaintiff filed a complaint and motion for temporary restraining order against Ms. Wisdom and LOI. Dkt. # 1, 3. On March 16, 2021, Defendants filed a notice of intent to oppose the motion. Dkt. # 16. The following day, the Defendants filed their response, Dkt. # 20, and the Court scheduled a hearing on the

ORDER - 4

motion for temporary restraining order for March 19, 2021. The parties subsequently filed a stipulated motion to extend the deadline for reply and move the hearing date, indicating that they were exploring "a potential resolution of their dispute without further court involvement." Dkt. # 24 at 2. The Court granted the motion and rescheduled the hearing for March 24, 2021. On March 23, Plaintiff filed a reply indicating that the parties had not reached a resolution. Dkt. # 26. The Court heard oral argument on March 24, 2021.

### III.   LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

### IV.   DISCUSSION

The Court begins its analysis with the second *Winter* prong, which requires Plaintiff to show that there is a likelihood of irreparable harm in the absence of preliminary relief. 555 U.S. at 20. Plaintiff claims that its business interests will suffer irreparable harm if Ms. Wisdom is permitted to continue in her role with LOI. Dkt. # 3 at 13. The Court is unpersuaded. First, Plaintiff waited three weeks after Ms. Wisdom filed an action for declaratory relief in King County Superior Court before it filed this lawsuit. Plaintiff claims that this time lag was based on its belief that the parties discussions

ORDER - 5

would result in resolution without court intervention.  However, over seven weeks have now passed since Ms. Wisdom has been in her position with LOI and Plaintiff has failed to provide any evidence demonstrating irreparable harm caused by Mr. Wisdom in her new role, undermining its alleged need for immediate relief.

Plaintiff's alleged evidence of irreparable harm consists primarily of the results of the forensic examination of Ms. Wisdom's work devices as well as her retention of confidential spreadsheets on her personal computer.  The Court agrees that this evidence raises significant questions and concerns about Ms. Wisdom's activity and whether she breached her restrictive covenants.  But a showing of suspicious activity is insufficient to establish a likelihood of irreparable harm.  Indeed, Plaintiff provides no evidence and makes no allegation that Ms. Wisdom has used or attempted to use any of Plaintiff's confidential information or trade secrets in any way.

Plaintiff has failed to demonstrate a likelihood of irreparable harm requiring immediate injunctive relief.  A failure to establish one of the *Winter* prongs is fatal to a motion for temporary injunctive relief.  *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (holding that a "plaintiff [must] make a showing on *all four prongs* to obtain a preliminary injunction").  The Court therefore need not consider the other *Winter* prongs to conclude that Plaintiff has failed to meet its burden to obtain relief through a temporary restraining order.

/ / /
/ / /
/ / /
/ / /
/ / /

ORDER - 6

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for temporary restraining order is **DENIED**.  The Court reserves consideration of Plaintiff's motion for preliminary injunction and grants Defendants' request for a hearing pursuant to Local Rule 7(d)(3).  Local Rules W.D. Wash. LCR 7(d)(3).  The Court will contact the parties to schedule a hearing via Zoom videoconference on the motion for preliminary injunction.

DATED this 26th day of March, 2021.

The Honorable Richard A. Jones
United States District Judge